## O'NEAL v. UNITED STATES.

### No. 1482.

Municipal Court of Appeals for the District of Columbia.

Argued May 3, 1954.

Decided June 9, 1954.

Rehearing Denied July 8, 1954.

Charles A. Schaeffer, Washington, D. C., for appellant.

Harold H. Greene, Asst. U. S. Atty., Silver Springs, Md., with whom Leo A. Rover, United States Attorney, Lewis A. Carroll and Robert J. Asman, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before CAYTON, Chief Judge, and HOOD and QUINN, Associate Judges.

QUINN, Associate Judge.

Appellant was convicted by a jury of violating Title 33–416 of the District of Columbia Code, which reads as follows:

"Any store, shop, warehouse, dwelling-house, building, vehicle, boat, aircraft, or any place whatever, which is resorted to by narcotic drug addicts for the purpose of using narcotic·

drugs or which is used for the illegal keeping or selling of the same, shall be deemed a common nuisance. No person shall keep or maintain such a common nuisance."

At the trial it was shown that Johnson, an undercover agent for the Federal Bureau of Narcotics, had made several purchases of narcotic drugs from one George Carter. These purchases were made either at 408 K Street, N. W., or in the immediate vicinity. On the basis of these purchases, Johnson had sworn to an arrest warrant for Carter. On July 7, 1953, at approximately 11 p.m., Carter was seen by Johnson at the corner of 4th and K Streets. This information was relayed by Johnson to his superior officers, who at that time were making final preparations to serve a number of arrest warrants in a city-wide raid on various narcotic peddlers, including Carter. Other officers were then sent out with instructions to arrest Carter. About 2 o'clock in the morning they proceeded to 408 K Street, wherein Carter was believed to reside. As they approached the building a woman's voice was heard to call out, "The Police." Upon hearing this the officers immediately entered the building through a closed but unlocked door and proceeded to the second-floor apartment. They went into the kitchen and found appellant standing next to a table on which were various articles of drug-taking paraphernalia. One of the officers identified himself and asked for Carter. Appellant denied knowing him. In explaining the presence of the drug-taking paraphernalia, she admitted to the police that she was a drug addict and had just taken a "shot" of heroin. Of the four other persons present in the apartment, two admitted being drug addicts. While these persons were being questioned, another officer discovered 34 capsules of heroin lying on the ground directly beneath the window next to which appellant had been found standing. These capsules and the drug-taking paraphernalia, which contained traces of heroin, were introduced into evidence at the trial. No evidence was offered by or in behalf of the defendant.

■ Appellant assigns two errors. She first contends that the trial court erred in denying her motion to suppress as evidence the drug-taking paraphernalia seized in her apartment. The motion was based on the premise that the search and seizure by the police was in violation of her rights under the Fourth Amendment to the Constitution, and therefore the seized articles were not available to the prosecution. With this we cannot agree. It is clear that the Constitution protects citizens only from unreasonable searches and seizures, and in order to have seized evidence suppressed it must be shown that the search and seizure was unreasonable. No such showing was made in the present case.

■ Although there have been numerous rules laid down as to what constitutes an unreasonable search and seizure, it has often been stated that the legality of any particular search must be ultimately determined by the facts and circumstances of each case.[1] In the present case the police had an arrest warrant for a known drug peddler issued only after actual purchases of contraband narcotics. They had reasonable grounds for believing that he would be found at 408 K Street, as some of the purchases had been made at that address. Although Carter possibly could have been arrested earlier on a public street, there were legitimate reasons for foregoing the arrest at that time. The undercover agent who saw Carter on the street had full knowledge of the arrests which were planned to take place in a few hours. To arrest Carter prematurely might very well have alerted the other suspects to the coming raid. We see no reason why the police should have been forced to jeopardize months of undercover work merely to seize a suspect on the street rather than at his residence. There was no showing here,

1. United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653; McKnight v. United States, 87 U.S.App.D.C. 151, 183 F.2d 977.

as was made in the McKnight[2] and Accarino[3] cases, that the police deliberately delayed making the arrest until the defendant was in his home so that a search could be made of those premises.

 Nor can there be any serious claim that the police failed to identify themselves as they approached appellant's residence. Such a step was rendered unnecessary when one of the women inhabitants clearly identified them as they approached. Further, this is not a case of appellant's door being broken down by the police without first making known the cause of their demand for entry.[4] As appellant was a tenant of the second floor, no right of hers was violated by opening the unlocked door on the first floor. There was no showing that any doors were forced in appellant's apartment. Finally, when the officers came into the apartment they immediately made known their purpose for being there, i. e., the arrest of Carter.

From all these facts and circumstances it appears that the officers' presence in appellant's apartment was in no way violative of her constitutional rights. This being so, they had a right to arrest her for a crime or crimes being committed in their presence, and to seize the evidence of those crimes.

 Appellant's second assignment of error has to do with the admission into evidence of the capsules of heroin found outside her window. We find nothing in the record to show that any objection was made to this evidence. It is well settled that as a general rule errors not brought to the attention of the trial judge may not be raised for the first time on appeal. Even if such an objection had been raised, we can see no error in the admission of the evidence. The capsules were found under such circumstances as to make it highly probable that they had been thrown from appellant's window. Thus, they were clearly admissible,[5] and it would be a question for the jury as to what weight should be given to this evidence.

Affirmed.

---

2. McKnight v. United States, supra.

3. Accarino v. United States, 85 U.S.App. D.C. 394, 179 F.2d 456.

4. Gatewood v. United States, D.C.Cir., 209 F.2d 789; Accarino v. United States, supra.

5. Robinson v. United States, 53 App.D.C. 96, 288 F. 450; Gee Woe v. United States, 5 Cir., 250 F. 428, certiorari denied 248 U.S. 562, 39 S.Ct. 8, 63 L.Ed. 422.